UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOAN C. LIPIN,

       Plaintiff,

  -against-          07 Civ. 7833 (RJH)

               **MEMORANDUM**
ULF BERGQUIST,         **OPINION AND ORDER**

       Defendant.

*Pro se* plaintiff Joan C. Lipin ("Plaintiff") is the daughter of Dr. Theodore Lipin ("Dr. Lipin"), who died in Stockholm, Sweden on October 6, 2005. This action is one of several proceedings in which Plaintiff asserts rights to property once owned by Dr. Lipin and now claimed as assets of his estate. This Court has already dismissed similar claims brought by Plaintiff in a related action against other defendants based on many of the same allegations (the "*Hunt* action"). *See Lipin v. Hunt*, 538 F. Supp. 2d 590 (S.D.N.Y. 2008).[1]

Among the properties claimed by Plaintiff are a collection of antique coins and real property located in Bridgton, Maine (the "Moose Pond Property"). Defendant Ulf Bergquist ("Bergquist") is a Swedish attorney who works in Sweden and Germany. Bergquist has been appointed administrator of Dr. Lipin's estate in proceedings currently pending before a court in Stockholm. Bergquist has moved for dismissal of this action for lack of personal jurisdiction, for failure to state a claim upon which relief can be granted, and based on the doctrine of *forum non conveniens*. Plaintiff has moved for

---

[1] Other related litigation involving Plaintiff is summarized in *Lipin v. Hunt*, 538 F. Supp. 2d at 592–93.

judicial disqualification, for disqualification of Bergquist's counsel, and for leave to amend the complaint. For the reasons discussed below, Bergquist's motion to dismiss for lack of personal jurisdiction is granted and Plaintiff's motions are denied. The Court does not reach the other grounds for dismissal raised in Bergquist's motion to dismiss.

### PLAINTIFF'S MOTIONS FOR JUDICIAL DISQUALIFICATION AND DISQUALIFICATION OF COUNSEL

Plaintiff has filed a motion dated March 31, 2008, which the Court interprets as requesting (1) judicial disqualification pursuant to 28 U.S.C. § 455; (2) the disqualification of Allegaert Berger & Vogel LLP ("Allegaert"), the law firm representing Bergquist, for alleged misrepresentations and "fraudulent concealment" before this Court (Pl.'s Br. 1, 3–8, 10; Lipin Decl. ¶¶ 23, 29, 42, 44, 62, 63, Mar. 29, 2008), and (3) leave to amend the complaint to assert claims against Allegaert based on these actions (Pl.'s Br. 1, 3, 10).[2]

Before addressing Bergquist's motion to dismiss, the Court will address Plaintiff's motions for judicial disqualification and for disqualification of Bergquist's counsel. Plaintiff's motion for leave to amend will be considered in conjunction with the motion to dismiss.

---

[2] Plaintiff submitted nearly identical motions in this action and the *Hunt* action. Therefore, some sections of her motion are not pertinent to the instant action, for example, references to Rule 60(b) of the Federal Rules of Civil Procedure, a motion to vacate the February 20, 2008 dismissal of the *Hunt* action, and allegations regarding counsel for Danske Bank, a defendant in the *Hunt* action. (*See, e.g.,* Pl.'s Br. 3, 4 n.1, 10.) The Court will not address these sections in the instant motion.

**I.    Plaintiff's Motion for Judicial Disqualification**

Plaintiff moves for judicial disqualification pursuant to 28 U.S.C. § 455(a), (b)(1), and (b)(2), citing press releases describing the representation of Danske Bank, a defendant in the *Hunt* action, by the undersigned's former law firm, White & Case LLP ("White & Case") in connection with Danske Bank's acquisition of a Finnish bank in 2006 and 2007 and other unidentified corporate transactions.[3] (Lipin Decl., Exs. H, I, Mar. 29, 2008.)

Under 28 U.S.C. § 455(a), "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Disqualification under this section is required if "an objective, disinterested observer fully informed of the underlying facts [would] entertain significant doubt that justice would be done absent recusal." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) (internal quotation marks omitted). "Where a case, by contrast, involves remote, contingent, indirect or speculative interests, disqualification is not required." *Id.* (internal quotation marks omitted). "Moreover, where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *Id.*

"[The] prior representation of a party by a judge or his firm with regard to a matter unrelated to litigation before him does not automatically require recusal." *Nat'l Auto Brokers v. GM*, 572 F.2d 953, 958 (2d Cir. 1978). The corporate transactions at issue have absolutely no relation to Plaintiff's claims. No "objective, disinterested observer" could question the impartiality of these proceedings as a result of this incidental and insignificant connection between this Court and a party in a related action.

---

[3] Plaintiff also alleges disqualification is required because both White & Case and Danske Bank have offices in Stockholm, Sweden. (Lipin Decl. ¶ 49, Mar. 29, 2008.)

28 U.S.C. § 455(b)(1) requires disqualification "where [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." As evidence of bias, Plaintiff cites the Court's "silence" regarding her antitrust claims in its opinion dismissing her complaint in the *Hunt* action, *Lipin v. Hunt*, 538 F. Supp. 2d 590 (S.D.N.Y. 2008) (the "*Hunt* opinion"). (*Id.* at 8–9.) Plaintiff did not assert any antitrust claims in the *Hunt* action. Plaintiff also points to the Court's citation, in the *Hunt* opinion, of the numerous published opinions in which she has been sanctioned for her litigation conduct and its citation of the Maine state court decision that rejected Plaintiff's claim to ownership of the coin collection and the Moose Pond Property. (Pl.'s Br. 4 n.1.) The Court's citation of relevant case law unfavorable to Plaintiff's case is proper and not indicative of bias. Plaintiff's allegations regarding bias and/or prejudice are frivolous and are rejected.

28 U.S.C. § 455(b)(2) requires disqualification "where in private practice [a judge] served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning this matter, or the judge or such lawyer has been a material witness concerning it." Plaintiff makes no allegation implicating this section.

Plaintiff's motion for judicial disqualification is denied.

## II. Plaintiff's Motion for Disqualification of Counsel

The Court interprets Plaintiff's motion for disqualification of Allegaert to be based on her belief that defendant's counsel will be required to testify in this action.

(Pl.'s Br. 10 ("[D]isqualification of the attorneys representing the defendants is required because they are necessary witnesses.").)

Whether or not to disqualify a party's counsel is a decision left to the discretion of the Court. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975). "It is well established that the Court's authority to disqualify an attorney stems from its inherent power to 'preserve the integrity of the adversary process.'" *Dri Mark Prods., Inc. v. Wilpak Indus., Inc.*, 04 Civ. 696, 2006 WL 2882565, at *20 (E.D.N.Y. Oct. 6, 2006) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)).

An attorney is not permitted to represent his client and appear as a witness in the same action. *See, e.g., Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). If an attorney's testimony "could be significantly useful to his client. . . . he should be disqualified regardless of whether he will actually be called." *Id.*

An attorney also may not continue representation once it is apparent that "his testimony is or may be prejudicial to his client." *Id.* Testimony will be considered "prejudicial" if it is projected to be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Id.*

"Although doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden,' and meet a 'high standard of proof' before a lawyer is disqualified. Mere speculation will not suffice." *Paretti v. Cavalier Label Co., Inc.*, 722 F. Supp. 985, 987 (S.D.N.Y. 1989) (citations omitted); *see also Lamborn*, 873 F.2d at 531 ("[T]he moving party bears the burden of demonstrating

specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial." (internal quotation marks omitted)).

Plaintiff alleges that Allegaert has "fraudulently concealed" from the Court and from Plaintiff (1) the fact that Dr. Lipin's coin collection had been sold, and (2) an April 6, 2006 email from David Hunt to Bergquist predicting that Plaintiff would sue for conversion if the coin collection were sold and recommending that the collection not be sold until a court determination on ownership.[4]  (Lipin Decl. ¶¶ 23, 29, 42, 44, 62, 63, Ex. G, Mar. 29, 2008.)  Plaintiff has not met her burden of demonstrating that disqualification is required, as these allegations do not support the contention that any attorney will be called as a witness at trial.

Furthermore, since the question of disqualification turns on the nature of the attorney's testimony at trial, Plaintiff's motion is premature.  *See, e.g., Dri Mark*, 2006 WL 2882565, at *22 (finding motion to disqualify premature when no determination had yet been made that attorney's testimony was "critical to the issues such that his testimony would 'substantially prejudice'" the client).  There has been no discovery in this action.  Therefore, the content, relevance, and importance of any witness's trial testimony is speculative at best.  Plaintiff's motion to disqualify Allegaert is denied.[5]

---

[4]  This recommendation was based on Hunt's (correct) prediction that, no matter how weak Plaintiff's case for ownership of the coin collection, its sale would immediately provoke "new rounds of litigation and difficulty" from Plaintiff.  (Lipin Decl. Ex. G, Mar. 29, 2008.)

[5]  Plaintiff also filed a second motion dated June 7, 2008 seeking Allegaert's disqualification.  This motion raises no additional arguments in support of disqualification and is denied for the reasons discussed herein.

## BERGQUIST'S MOTION TO DISMISS

I.   **Plaintiff's Amended Complaint**[6]

Plaintiff's Amended Complaint consists of 279 paragraphs charging Bergquist and others with dozens of civil and criminal wrongs perpetrated individually and as part of one or more conspiracies. In the sections of her complaint relevant to the instant action, Plaintiff contends that Bergquist, who was improperly and fraudulently appointed as administrator of Dr. Lipin's European estate (*see, e.g.,* Am. Compl. ¶¶ 60–65, 84, 176), used his position to further a scheme to steal Plaintiff's property (*see, e.g., id.* ¶¶ 11, 58, 90, 92, 105, 124, 131, 136, 151, 166, 173, 179, 180, 183, 184), improperly inventory and dispose of Estate assets (*see, e.g., id.* ¶¶ 45–57, 165, 167, 198–200, 239–59), and enrich himself at Plaintiff's expense (*see, e.g., id.* ¶¶ 11, 172), for example, by charging "astronomical" legal fees to be paid out of plaintiff's distributions from the estate (*see, e.g., id.* ¶¶ 168, 172, 210, 261, 262, 264–77, 279).

Plaintiff alleges that Bergquist "lured" Plaintiff to Dr. Lipin's apartment on November 6, 2005 through "dishonesty, fraud, trickery, and deceit." (*Id.* at ¶ 45.) Bergquist did not inventory the contents of her father's apartment, as Plaintiff requested (*see, e.g., id.* at ¶¶ 45–55), but instead acted carelessly, discarding several valuable items, including "ivory carvings . . . artwork, and the valuable research notes that [Dr. Lipin]

---

[6] Plaintiff filed this action by Summons with Notice in New York state court. Bergquist removed the action to federal court, where it was consolidated for pretrial purposes with the *Hunt* action. Plaintiff did not file a complaint in the instant action and proposed to Bergquist that she would file her complaint after discovery was complete. The Court then ordered her to file a complaint in the instant action. Plaintiff responded by filing a complaint under a joint caption, in which she asserted claims against defendants in both the instant action and the *Hunt* action. Because Plaintiff had not been granted leave to amend her complaint in the *Hunt* action, which the defendants had already moved to dismiss, and because amendment would be futile, the Court struck her improper complaint from the *Hunt* action. Therefore, Plaintiff's Amended Complaint, though it purports to assert claims against David Hunt and Danske Bank, governs the instant action only. *See Lipin v. Hunt*, 538 F. Supp. 2d at 603.

had made . . . for which he had hoped to receive a Nobel Prize." (*Id*. ¶¶ 48, 51, 52.) Bergquist also allegedly sold several items which belonged to Plaintiff, including artwork and silver pieces. (*Id*. ¶¶ 56, 57.)

During the November 2005 visit to Dr. Lipin's apartment, Plaintiff alleges that Bergquist coerced Plaintiff to turn over the keys to a Danske Bank safe deposit box located in Copenhagen, Denmark that contained Dr. Lipin's coin collection, which Plaintiff contends belongs to her.[7] (*Id*. ¶¶ 43, 45–47, 126.) According to Plaintiff, Bergquist and Danske Bank conspired to bar Plaintiff's access to the box. (*Id*. ¶¶ 24–26.) Bergquist then fraudulently induced Danske Bank to allow Bergquist to access the box and take possession of its contents, including the coin collection, which he "carr[ied] . . . away to unknown locations . . . transferring them to unknown persons."[8] (*Id*. ¶¶ 31, 105, 166.) Plaintiff believes that some or all of the most valuable coins and other properties stored in the box have been stolen.[9] (*Id*. ¶ 124.)

---

[7] During his lifetime, Dr. Lipin assembled a large collection of "antique coins," allegedly dating back to approximately 530 B.C. (Am. Compl. ¶¶ 36, 199.) Plaintiff claims to have "received and accepted" the coin collection as an *inter vivos* gift in 1990, and to have been the owner, entitled to immediate possession, at all times since. (*Id*. ¶¶ 114–16, 186–92, 248.) Plaintiff's alleged ownership is based on a letter dated February 3, 1990 and signed by Dr. Lipin which states, "This is to attest that as of this date my entire numismatic collection, valued at $8,500, has been given as a gift to my daughter, Joan Lipin, who resides at 45 East 89 Street, New York, NY." (*Id*. ¶ 114.) Plaintiff does not allege that the note was delivered to or received by Plaintiff before Dr. Lipin's death. This Court has held in the *Hunt* action that the 1990 letter does not entitle Plaintiff to ownership of the coin collection. *Lipin v. Hunt*, 538 F. Supp. 2d at 601.

[8] According to Plaintiff, Bergquist's actions were "fraudulent" because Bergquist purported to act on behalf of the executrix of the American estate, Evelyn Ellis, when in fact Evelyn Ellis was not the executrix of the estate. (*See, e.g., id*. ¶¶ 105, 108). According to Plaintiff, Bergquist and attorney David Hunt, a Maine attorney who represents Ms. Ellis, "fraudulently induced" Ms. Ellis to write a letter to Bergquist stating that she was the executrix of Dr. Lipin's American will and that she would cooperate with Bergquist. (*Id*. ¶¶ 93, 105, Ex. 18.) Bergquist then used this letter to "deceive Danske Bank, the courts, and other entities and person [sic] into believing that he and his agents had power to act in Europe for the estate in furtherance of the scheme . . . to steal the antique coin collection and other properties belonging to plaintiff." (*Id.* ¶ 105.)

[9] Plaintiff estimates the value of the coin collection to be in excess of thirty million dollars. (Am. Compl. ¶¶ 199, 255–59.) The basis for Plaintiff's estimate is an Associated Press article about an unrelated collection of rare American coins that sold for this amount. (*Id*. ¶ 255, Ex. 27.) Plaintiff reasons that since

Plaintiff alleges that Bergquist threatened to sell the coin collection if Plaintiff did not cease her estate-related litigation (*id.* ¶ 211), and, when she refused, directed a flawed valuation of the coin collection and sold it at "quickie auctions" for "bargain prices"[10] for the purpose of concealing its true ownership (*id.* ¶¶ 198–210, 212, 252).

During the November 2005 visit to Dr. Lipin's apartment, Plaintiff alleges that Bergquist also coerced Plaintiff to surrender her keys to the Moose Pond Property, then unlawfully sent the keys to Hunt. (*Id.* ¶¶ 43, 45–47, 130.) Hunt proceeded to trespass on the property and assert ownership on behalf of Dr. Lipin's estate, in furtherance of a scheme to steal this property, which Plaintiff alleges belongs to her. (*See, e.g., id.* ¶¶ 130–31.)

Plaintiff alleges various other actions as part of the plot to steal her property, including the creation of false and/or fraudulent documents (*see, e.g., id.* ¶¶ 105, 107, 108, 176, 177, 193), misrepresentations to and/or concealment from Plaintiff and Swedish and United States courts regarding the ownership and disposition of estate property (*see, e.g., id.* ¶¶ 123–24, 177, 201, 202, 211–13), the transfer of Plaintiff's personal bank accounts to the estate (*see, e.g., id.* ¶¶ 110, 180), the "tortious interference" with other allegedly jointly held safe deposit boxes in other countries (*see, e.g., id.* ¶¶ 125, 180), and the initiation of Swedish court proceedings against Plaintiff's wishes (*see, e.g., id.* ¶¶ 171, 174). The ultimate purpose of Bergquist and his co-conspirators' actions, Plaintiff explains, was to "enrich themselves by large amounts of money" by

---

some of the coins in Dr. Lipin's collection are older than those in the collection described in the article, Dr. Lipin's collection must be of comparable or greater value. (*Id.* ¶¶ 257, 258, Ex. 27.)

[10] According to an email written by Bergquist and sent to Plaintiff, the coin collection, which Dr. Lipin had valued at $8,500 in 1990, was sold in two auctions for $1.4 million. (Am. Compl. ¶ 201.)

"convert[ing] and launder[ing] [Plaintiff's property] through the Estate" and collecting it as "grossly exaggerated," "astronomical" legal fees.[11] (*Id.* ¶¶ 172, 210, 264.)

In the Amended Complaint, Plaintiff contends that Bergquist's actions constitute numerous legal offenses, many of which are obviously not applicable and/or are criminal violations rather than civil causes of action.[12] The Court need not determine exactly what causes of action Plaintiff's allegations might potentially support because, as discussed below, Plaintiff does not allege that any of Bergquist's actions were sufficiently connected with the New York forum to support personal jurisdiction under New York's long-arm statute.[13]

## II.  Personal Jurisdiction

Bergquist has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. "The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006). "In order to survive a motion to dismiss for

---

[11] An email from David Hunt attached to Plaintiff's Amended Complaint states that, as of May 31, 2007, legal bills for Dr. Lipin's estate and its beneficiaries totaled over $500,000, at least $430,000 of which was "attributable to nothing other than [Plaintiff's] ridiculous litigation tactics." (Am. Compl. Ex. 28.)

[12] Plaintiff makes reference to claims labeled, *inter alia*, assault, conspiracy, embezzlement, extortion, false imprisonment, false pretenses, fraudulent concealment, grand larceny, intentional infliction of emotional distress, larceny, larceny by trickery, malicious mischief, obstruction of justice, perjury, tax fraud, tortious interference, vexatious litigation, violations of her First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights, and violations of Sections 1 and 2 of the Sherman Act. (*See, e.g.,* Am. Compl. ¶¶ 119, 136, 137, 141, 151, 173, 179, 227, 261.) The summons served on Bergquist states that Plaintiff asserts "breach of fiduciary duty, fraud, deceit, tortious interference, larceny, larceny by trickery, theft, collusion, and conversion." (*Id.* Ex. 4.)

[13] Plaintiff also contends that Bergquist is vicariously liable for Hunt's actions, as alleged in Plaintiff's complaint in the *Hunt* action, and purports to incorporate most of the *Hunt* complaint by reference into the instant complaint. (*See, e.g.,* Am. Compl. ¶¶ 127, 137, 146, 170, 181, 204.) Plaintiff's allegations regarding conspiracy are largely conclusory and likely insufficient to state a claim against Bergquist. *See, e.g., Lipin v. Hunt*, 538 F. Supp. 2d at 602 (stating pleading requirements under New York law for conspiracy liability for torts of others). In any event, the Court has held in the *Hunt* action that none of Hunt's actions support the exercise of personal jurisdiction in this district. *See id.* at 597–98.

lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id.* "To make such a showing, the plaintiff may rely on the complaint, affidavits, and other supporting evidence." *Warner Bros. Entm't Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 264 (S.D.N.Y. 2007). When determining whether Plaintiff has made a sufficient showing regarding jurisdiction, the Court must accept Plaintiff's factual allegations as true. *See, e.g., Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F. 2d 194, 197 (2d Cir. 1990).

Under New York's general jurisdiction provision, a court may only exercise jurisdiction over causes of action unrelated to defendant's contacts within the state if the defendant "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its presence in this jurisdiction." *Mantello v. Hall*, 947 F. Supp. 92, 96–97 (S.D.N.Y. 1996) (interpreting New York C.P.L.R. § 301) (quoting *McGowan v. Smith,* 419 N.E.2d 321, 323 (1981)). Plaintiff does not allege that Bergquist engages in any "continuous or systematic" business in New York, and in her Amended Complaint, alleges only that specific jurisdiction exists, under New York C.P.L.R. § 302(a).[14]

---

[14] N.Y. C.P.L.R. § 302(a) provides that personal jurisdiction may be asserted over a non-domiciliary who
    1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
    2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
    3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
        (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
        (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
    4. owns, uses or possesses any real property situated within the state.
N.Y. C.P.L.R. § 302(a).

New York C.P.L.R. § 302(a)(1) and (2) provide that personal jurisdiction may be asserted over a non-domiciliary for a cause of action that arises from a transaction of business within the state or commission of a tortious act (other than defamation) within the state. N.Y. C.P.L.R. § 302(a)(1), (2). None of the actions or events upon which Plaintiff bases her claims took place in the state of New York, nor does Plaintiff allege that Bergquist has ever entered the state of New York. The only facts alleged by Plaintiff that demonstrate any connection between Bergquist and the state of New York are that Bergquist "has corresponded and done business with [P]laintiff in New York" by mail, telephone, fax, and email, and has sent invoices to Plaintiff at her New York City address. (Am. Compl. ¶ 10). None of Plaintiff's claims arise out of these alleged contacts.

New York C.P.L.R. § 302(a)(3) provides for personal jurisdiction over a defendant for a tortious act (other than defamation) committed outside the state and causing injury within the state if the defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3).

Plaintiff does not allege any injury that occurred within the state of New York within the meaning of § 302(a)(3). The only arguable basis for the existence of such an injury would be Plaintiff's residence in New York and Plaintiff's subsequent "experience" of economic and/or emotional injury in this state. However, "[a]n injury [for the purposes of § 302(a)(3)] . . . does not occur within the state simply because the

plaintiff is a resident." *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990). Rather, "[t]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Id.* (quoting *Carte v. Parkoff,* 543 N.Y.S.2d 718, 719 (N.Y. App. Div. 1989)); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999) (stating that the "original event" is "generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort"); *Fantis Foods, Inc. v. Standard Importing Co., Inc.*, 49 N.Y.2d 317, 326–27 (N.Y. 1980) ("It has . . . long been held that the residence or domicile of the injured party within a State is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured person resides or is domiciled there.").

Because Plaintiff has not made a prima facie showing that personal jurisdiction can be exercised over Bergquist in accordance with New York's long-arm statute, Bergquist's motion to dismiss is granted pursuant to Federal Rule of Civil Procedure 12(b)(2).

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND

In her March 31, 2008 motion, Plaintiff also seeks "permission . . . to assert" claims against Allegaert under Section 487 of the New York Judiciary Law. (Pl.'s Br. 3.) The Court interprets this as a motion for leave to amend the complaint to assert such claims.

Section 487 permits a civil action against "an attorney or counselor who is guilty of any collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." (Lipin Decl. ¶ 62, Mar. 29, 2008.) The only conduct Plaintiff identifies in support of her proposed claims is Allegaert's alleged "fraudulent concealment" of the sale of Dr. Lipin's coin collection and of Hunt's April 6, 2006 email to Bergquist, discussed previously in connection with Plaintiff's motion to disqualify Allegaert. (Lipin Decl. ¶¶ 23, 29, 42, 44, 62, 63, Ex. G, Mar. 29, 2008.)

Though leave to amend a complaint should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), leave to amend may be denied when such amendment would be futile. *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006).

Plaintiff's proposed amendment would be futile. "[C]ivil relief [under Section 487] is warranted only where the defendant attorney has engaged in a chronic, extreme pattern of legal delinquency." *Schindler v. Issler & Schrage, P.C.*, 692 N.Y.S.2d 361, 362–63 (N.Y. App. Div. 1999) (internal quotation marks omitted). Allegaert's conduct, as alleged by Plaintiff, does not satisfy these requirements. Indeed, Plaintiff does not explain why Allegaert had any obligation to disclose the allegedly concealed information at this stage of the litigation. In addition, it does not appear that Plaintiff's proposed claims fall within either the diversity jurisdiction or the federal question jurisdiction of this Court. Plaintiff's motion for leave to amend her complaint to assert claims against Allegaert is denied.

## CONCLUSION

For the reasons discussed herein, Bergquist's motion to dismiss **[unnumbered, filed Jan. 15, 2008]** is GRANTED. Plaintiff's motions dated March 31, 2008 [11] and June 7, 2008 **[25]** are DENIED. The clerk of the court is directed to close this case.

SO ORDERED.

Dated: New York, New York
August 28, 2008

Richard J. Holwell
United States District Judge